# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| DIANE CARTER, | : | CIVIL ACTION |
| --- | --- | --- |
| Plaintiff | : | |
| | : | |
| v. | : | |
| | : | |
| SUSQUEHANNA REGIONAL POLICE | : | |
| DEPARTMENT, et al., | : | |
| Defendants | : | NO. 08-4764 |

**MEMORANDUM**

PRATTER, J.                                                                                                                              APRIL 30, 2009

Diane Carter complains that her former employer and superiors in the Susquehanna Regional Police cadre subjected her to sexual harassment for several years, ultimately culminating in her termination in 2008. She also alleges that they have defamed her to prospective employers. For their part, the Defendants filed a Motion to Dismiss Plaintiff's Amended Complaint. The Court heard oral argument on the pending motion on April 17, 2009, and now grants the Motion in part and denies it in part.

**FACTUAL[1] AND PROCEDURAL BACKGROUND**

Ms. Carter filed a complaint on October 3, 2008 against all of the Defendants except Susquehanna Regional Police Commission (Police Commission). Defendants filed a motion to dismiss, and Ms. Carter filed an Amended Complaint as a response, adding, among other things, the Defendant Police Commission. The Amended Complaint alleges that Ms. Carter formerly worked for the Susquehanna Regional Police Department (Police Department), which is operated by the Police Commission. She alleges that Defendants Overlander, Draeger, Murphy, Strickland, and Mohr are or were members of the Police Commission, that Mr. Roberts is a

---

[1] The facts contained herein are drawn from Ms. Carter's Amended Complaint.

sergeant with the Police Department and was the Chief of Police, that Mr. Englert is a lieutenant with the Police Department, that Mr. Haugh is now the Chief of Police and was a sergeant, and that Mr. Rapp is a sergeant with the Police Department.

Ms. Carter was employed as a full-time patrol officer with the Police Department from April 1, 2002 to August 18, 2006, when she became a part-time patrol officer. On August 31, 2008, she was terminated from her job. Ms. Carter alleges that she was subjected to unwanted sexually inappropriate, offensive and insensitive behavior, including sexual comments and innuendo by Mr. Roberts, and that the conduct began early in her employment and continued regularly thereafter. She also claims that she was subject to disparate treatment as one of two female officers on the police force, including being obliged to use the male locker room rather than being provided with a separate facility.

Ms. Carter alleges that she objected to the sexually inappropriate conduct, but that Mr. Roberts did nothing to address her concerns. She claims that she and the other female police officer went to the Board of Commissioners to voice their concerns about the conduct, as well as about other issues pertaining to the mismanagement of the Police Department. After voicing these concerns to the Police Commission, Ms. Carter alleges, Messrs. Roberts, Haugh, Englert and Rapp (the Supervisor Defendants) subjected her performance to heightened scrutiny. She claims that Messrs. Overlander, Draeger, Murphy, Strickland, and Mohr (the Commissioner Defendants) knew and acquiesced in this heightened scrutiny.

Ms. Carter maintains that she continually protested the unfair treatment, and at one point threatened to file a lawsuit. She claims that this only served to intensify the retaliation, and that she was placed on remedial training status, subjected to one-on-one supervision, received poor

performance evaluations, and was openly criticized by Messrs. Roberts, Haugh and Englert. For example, as an incident of the treatment to which she was subjected, she states that she was disciplined for leaving a middle initial out of a report, while male officers reported for watching pornography at the station were not disciplined.

Ms. Carter alleges that the continual harassment caused "severe and extreme physical and emotional upset" and directly caused her to resign her full-time position in August 2006 and go to part-time status. She complains that even then she continued to raise her concerns, including meeting with the Police Commission, and that she filed charges of discrimination with the Pennsylvania Human Relations Commission and U.S. Equal Employment Opportunity Commission. She alleges that she wished to return to full-time status for work and requested to return repeatedly, but only if the hostile work environment was remedied. Ms. Carter claims that Mr. Overlander was even removed from the Police Commission for a time because of the objections she raised to his conduct. Ms. Carter claims that she applied to other police departments for a full time job as a police officer but that "upon information and belief," Defendants Roberts, Englert and Haugh have demeaned and defamed her to prospective employers and continue to do so.

On August 31, 2008, Ms. Carter was terminated from the Police Department, in retaliation for her complaints. She claims that this and all other employment actions taken against her were done by the Supervisor Defendants with the knowledge and acquiescence of the Commissioner Defendants. She claims that the Commissioner Defendants caused the discrimination and/or permitted it to continue by "taking official actions to perpetuate the environment and by failing and refusing to take appropriate action to correct and remedy a

known discriminatory environment." Am. Compl. at ¶ 23. She claims that the actions taken against her continued regularly and consistently throughout her employment and that each action about which she complains escapes the statute of limitations under a theory of continuing violations as a result. She claims that she exhausted her administrative remedies and received a Notice of Right to sue from the EEOC on September 17, 2008.

Ms. Carter brings three counts in her Amended Complaint. The first is a sexual discrimination/hostile work environment claim under 42 U.S.C. § 1983 against the Supervisor and Commissioner Defendants, for which she demands compensatory and punitive damages, as well as costs, interest, attorneys' fees and injunctive relief. Ms. Carter levies Count II against the Police Commission,[2] claiming that it violated Title VII and the Pennsylvania Human Relations Act by subjecting her to a hostile work environment, and she claims the same damages as she demanded in Count I. Finally, in Count III, Ms. Carter alleges that Defendants Roberts, Haugh, and Englert defamed her by making false statements demeaning her character and reputation to prospective employers. She claims that the statements related to her character, credibility, and fitness to perform as a police officer, that the prospective employers understood them as applying to her, and that the comments were defamatory and understood as such by the prospective employers. She again demands the same relief as she does in Count I. Defendants have moved to dismiss Ms. Carter's Amended Complaint on several grounds which are discussed here.

---

[2] Ms. Carter styles this count as one against the "SRPDC," and uses the plural "Defendants" throughout the allegations in this count. Thus, it is unclear whether she brings this count against the Police Commission (the SRPC), the Police Department (the SRPD), or both. Ms. Carter seems to suggest in her response to the Defendants' Motion to Dismiss that she is suing both entities, despite only listing one misnamed entity in the title of that count. The caption of her Amended Complaint includes both the Police Department and the Police Commission.

LEGAL STANDARD

A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint. Conley v. Gibson, 355 U.S. 41, 45-46 (1957). Rule 8 of the Federal Rules of Civil Procedure requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964-65 (2007) (quoting Conley, 355 U.S. at 47). While a complaint need not contain detailed factual allegations, the plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 1964-65 (citations omitted). Specifically, "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." Id. at 1965 (citations omitted).

In making such a determination, courts "must only consider those facts alleged in the complaint and accept all of those allegations as true." ALA, Inc. v. CCAIR, Inc., 29 F.3d 855, 859 (3d Cir. 1994) (citing Hishon v. King & Spalding, 467 U.S. 69, 73 (1984)); see also Twombly, 127 S. Ct. at 1965 (stating that courts must assume that "all the allegations in the complaint are true (even if doubtful in fact)"). The Court must also accept as true all reasonable inferences that may be drawn from the allegations, and view those facts and inferences in the light most favorable to the non-moving party. Rocks v. Philadelphia, 868 F.2d 644, 645 (3d Cir. 1989). The Court, however, need not accept as true "unsupported conclusions and unwarranted inferences," Doug Grant, Inc. v. Greate Bay Casino Corp., 232 F.3d 173, 183-84 (3d Cir. 2000) (citing City of Pittsburgh v. West Penn Power Co., 147 F.3d 256, 263 n.13 (3d Cir. 1998)), or the plaintiff's "bald assertions" or "legal conclusions," Morse v. Lower Merion Sch. Dist., 132 F.3d.

902, 906 (3d Cir. 1997).

To evaluate a motion to dismiss, the Court may consider the allegations contained in the complaint, exhibits attached to the complaint, matters of public record and records of which the Court may take judicial notice. See Tellabs, Inc. v. Makor Issues & Rts., 127 S. Ct. 2499, 2509 (2007); Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993).

**DISCUSSION**

*Count I*

Defendants argue that Ms. Carter's § 1983 claim falls outside the 2-year statute of limitations. They posit that Ms. Carter filed her complaint on October 6, 2008[3] and, therefore, the actions complained of must have occurred after October 6, 2006 in order to be timely. The Defendants note that Ms. Carter assumed part-time status on August 18, 2006, and she alleges that the conduct that led to this switch and eventually to her termination began shortly after she began work at the Police Department in 2002. They also complain that Ms. Carter failed to satisfy Federal Rule of Civil Procedure 9(f)'s admonition that time and place are material, that is, Ms. Carter arguably did not specifically set forth the time and place of any of her allegations other than the date of her termination and the date she transitioned to part-time status.

The Defendants claim that the so-called continuing violation theory does not apply to Ms. Carter's claims. They argue that to establish a continuing violation theory, a plaintiff must show (1) that at least one act occurred within the statutory period, and (2) that the prior conduct was

---

[3] According to the docket, Ms. Carter filed on October 3, 2008, and the complaint was docketed on October 6, 2008.

not isolated or sporadic, but was part of a continuing, ongoing pattern.  See Defendants' Mot. to Dismiss at 11, citing West v. Philadelphia Elec. Co., 45 F.3d 744, 754-55 (3d Cir. 1995). However, they cite Hicks v. Big Brothers/Big Sisters of America, 944 F. Supp. 405, 408 (E.D. Pa. 1996), for the proposition that if the prior events should have alerted a reasonable person to act, the continuing violations theory will not overcome the statute of limitations.  They argue that the reported long history of the alleged violations, which began in 2002, demonstrates that Ms. Carter should have brought her § 1983 claim much earlier and that therefore to the extent that her claims include conduct occurring before October 6, 2006, they should be dismissed.

Ms. Carter responds that she does not dispute the general law cited by the Defendants with regard to the statute of limitations for § 1983 actions, but that their interpretation of that law is too narrowly drawn and that their argument is premature.  She argues that the conduct complained of was continuous and that she continually attempted to right the situation, including filing administrative charges.  She cites no law in support of her argument.

The Defendants respond by pointing out that Ms. Carter's argument that she doggedly complained of the hostile work environment demonstrates that she knew or believed that the conduct was discriminatory and that the Defendants were responsible and yet still failed to file a claim in a timely manner.

At the outset, regardless of whether her complaint was timely as to the conduct before October 3, 2006, Ms. Carter did complain that she was unlawfully terminated on August 31, 2008, which is at least one event that is well within the statute of limitations.  Thus, this particular argument can not dispose of Count I entirely.

The leading Supreme Court case on the topic of continuing violations is Nat'l RR

Passenger Corp. v. Morgan, 536 U.S. 101 (2002). In Morgan, the Supreme Court differentiated claims based on discrete acts of discrimination, such as termination, failure to promote, or refusal to hire, from claims based on hostile work environment, which by their very nature involve repeated conduct. See id. at 115. The Court reviewed its past holdings that "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges," that "existence of past acts and the employee's prior knowledge of their occurrence . . . does not bar employees from filing charges about related discrete acts so long as the acts are independently discriminatory and charges addressing those acts are themselves timely filed," and that "prior acts [may be used] as background evidence in support of a timely claim," even when those prior acts are themselves time barred. Id. at 113. As to hostile work environment claims, however, the Court held that all incidents making up a hostile work environment claim are part of one practice and, therefore, as long as one act that is part of that practice occurred within the statute of limitations, the claim is timely. Id. at 118.

In a case similar to the one at bar (and filed by the same plaintiff's attorney), the District Court for the Middle District of Pennsylvania applied Morgan to a claim that involved a mix of discrete acts and hostile work environment claims. See Miles v. PA Dept. of Conservation and Natural Resources, Civil Action No. 1:08-cv-1561, 2009 WL 506371 (M.D. Pa. Feb. 27, 2009). Plaintiff Christine Miles filed a complaint against her former employer, claiming that she was demoted in 2001, transferred in 2002, and ultimately constructively discharged in 2008, as well as subjected to a hostile work environment for the entire time that she worked under her supervisor Mr. Parrish. Id. at *1. The Defendants filed a motion to dismiss Ms. Miles's § 1983 gender discrimination claim on statute of limitations grounds. They claimed that because Ms.

8

Miles filed an EEOC claim in 2003, she was aware of her claim by that time at the latest, and that therefore her entire claim was time-barred. Id. at *3.

The Miles court held that the continuing violation doctrine applied because Ms. Miles alleged, although vaguely, that she was harassed continuously from 2001 to 2008, but that her claim did not extend all the way back to the beginning of the offender's supervision of Ms. Miles, despite Ms. Miles's allegations that she was subject to a hostile work environment for that entire time. The court held that a plaintiff "should not be able to cloak those actions for which the statute of limitations has run under the cover of a hostile environment claim," and that therefore the continuing violation doctrine would not extend to revive her claim regarding the discrete acts of discrimination that occurred in 2001 and 2002 (i.e., the demotion and transfer). Id. at *5. Thus, the court allowed Ms. Miles to proceed with her hostile work environment claim, but limited the actionable period to 2002 (after Ms. Miles's alleged discriminatory transfer) through her constructive discharge in 2008. Id. at *5-6.

Here, Ms. Carter claims that as a result of discriminatory conduct she felt compelled to reduce her hours from full-time to part-time on August 18, 2006. This reduction in hours arguably could be called a constructive demotion; such an adverse employment action is a discrete discriminatory act. See, e.g., Sampson v. City of Philadelphia, Civil No. 08-4341, 2008 WL 5250278, at *2-4 (E.D. Pa. Dec. 16, 2008) (constructive demotion was a discrete discriminatory act and because it took place outside of the statute of limitations was time barred even though an arguably related discriminatory act took place within the statute of limitations period and plaintiff alleged a hostile work environment claim); Baird v. Outlook Pointe, No. 4:07-CV-1580, 2008 WL 4287382, at *6 (M.D. Pa. Sept. 17, 2008) (reduction in hours is a

discrete act of discriminatory conduct); Dyber v. Northampton County Comm. College, No. Civ. A. 97-3641, 1997 WL 762796, at *2 (E.D. Pa. Dec. 10, 1997) (reduction in hours for discriminatory reasons is a proper basis for a § 1983 employment discrimination claim). Thus, Ms Carter's claim, even if it is for a hostile work environment, may be time-barred at least as to conduct that took place before the constructive demotion on August 18, 2006. It is not clear from the Amended Complaint what discriminatory acts, if any, took place between August 18, 2006 and October 3, 2006, and whether those acts were discrete acts of discrimination. Ms. Carter sets out some general allegations of continuous harassment, but she has not specifically alleged any discriminatory conduct that fits within that time frame.

Whether Ms. Carter's reduction in hours actually qualifies as a constructive demotion, however, is not clear at this time without more facts. Likewise, it is not clear from the Amended Complaint whether Ms. Carter reasonably should have known that she had a hostile work environment claim and whether the violations were indeed continuous. She has clearly alleged at least one act within the statute of limitations period–her termination in August 2008. Thus, the Defendants' statute of limitations argument is premature, and the Court will not dismiss Count I on that ground.

The Defendants also argue that Ms. Carter has not properly alleged personal involvement of the individual defendants in support of her § 1983 claim. See, e.g., Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) ("An individual cannot be held liable unless he caused or participated in an alleged constitutional deprivation.") They argue that her allegations are too general–that merely alleging that each defendant either participated in, or knew of and acquiesced in, discriminatory conduct is insufficient. As to the Commissioner Defendants, in particular, they

claim that Ms. Carter has not alleged that individual commissioners, as opposed to the commission as a whole, had the ability to affect the terms and conditions of her employment.

Ms. Carter contends that she has alleged that all of the Supervisor Defendants subjected her to disparate treatment and retaliated against her for complaining about their disparate treatment, and that all of the Commissioner Defendants knew of and acquiesced in these discriminatory actions. She points out that she claimed that she even asserted that Defendant Overlander had a "personal agenda" against her.

The Defendants counter that Ms. Carter's allegations are conclusory and that after taking away the time-barred conduct, the only actionable conduct left is Ms. Carter's termination in 2008. They argue that Ms. Carter did not identify any specific defendants responsible for the decision to terminate her.

Ms. Carter does allege that her termination was the result of a continued pattern of discrimination and retaliation in which all of the individual defendants either participated in directly or knew of and acquiesced in. Am. Compl. at ¶ 23-24. She alleges several times that she complained to all of the individual defendants about her treatment and that they responded by either doing nothing or by retaliating against her, and she makes clear that this activity continued up to the time of her termination. As the Defendants point out, however, Ms. Carter does not make any explicit allegations about which individual defendants actually decided to terminate her from her job.

At this point, the Court must accept Ms. Carter's allegations as true, and assuming it is true that each individual defendant contributed to Ms. Carter's eventual discharge and the alleged hostile work environment by either personally acting against her or by knowing of and

11

acquiescing in the personal actions against her, Ms. Carter's Amended Complaint alleges just barely enough to get past Defendants' motion to dismiss. Cases dismissing complaints for failure to allege personal involvement seem to do so primarily when the allegations only connect an individual to the claim through a chain of command and when there is no allegation of personal knowledge. See, e.g., Rode, 845 F.2d at 1207-08, Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005). Here, Ms. Carter has at least alleged that she personally complained to all of the commissioners and her supervisors about her mistreatment. At the summary judgment stage, the Defendants will presumably be able to show the Court more about which individuals were or were not involved in Ms. Carter's termination and the events leading up to it. Thus, the Court will deny Defendants' Motion to Dismiss as to Count I of Plaintiff's Amended Complaint.[4]

*Count II*

Defendants argue that Ms. Carter fails to state a claim under Title VII and/or the PHRA because she sued the wrong employer organization. They claim that the Police Department has no authority to make employment decisions, but rather that the Police Commission does. They attach to their motion a Merger Agreement which lays out the respective roles of the two entities, noting that it is a public record kept in the ordinary course of business by the Police Commission and the Police Department. Thus, they argue that any claims against the Police Department are improper.[5]

---

[4] The final issue with regard to Ms. Carter's § 1983 claim is the Defendants' argument that Ms. Carter has not sufficiently alleged a conspiracy claim, if that was what she intended to do. Ms. Carter in no way addresses this argument in her response, and her counsel affirmed at oral argument that she is not asserting a conspiracy claim.

[5] They also argue that to the extent Count II attempts to assert Title VII claims against the individual defendants, it must fail because Title VII does not provide for individual liability. Ms.

12

Defendants also assert that the claim must fail as to the Police Commission because Ms. Carter has failed to exhaust administrative remedies. They note that Ms. Carter filed her EEOC/PHRC complaints against the Police Department but not the Police Commission. They claim that they identified the Police Commission as the proper party in their responsive pleading, but that Ms. Carter never corrected the administrative complaint to include the Police Commission. They also note that Ms. Carter did not include the Police Commission as a defendant in this case until January 7, 2009. The Defendants point out that Ms. Carter received a right to sue letter on September 17, 2008, and that consequently she had 90 days from that September date to file suit. They argue that because she did not add the Police Commission until after that 90-day period, she is now barred from asserting that claim.

Ms. Carter responds by first noting that although she did not mention the Police Commission in her § 1983 claim, she intends to assert a municipal liability claim against the Police Commission. As the Amended Complaint does not even hint at this claim, the Court need not address this issue unless and until Ms. Carter properly files a motion for leave to amend. In any case, the argument does not seem to have any real relation to her Title VII/PHRA claim.

Next, Ms. Carter states that she can challenge the affidavit and Merger Agreement attached to the Defendants' Motion to Dismiss; she asserts that her termination letter was on Police Department stationery under Mr. Haugh's signature (one of the Supervisor Defendants), and that her tax records list the Police Department as her employer. She claims that in any case she has asserted claims against her employer, and whether that is the Police Department or the Police Commission does not matter because she sued both and because there is no material

---

Carter does not argue this point.

13

distinction between the two. As in most of her response, Ms. Carter does not cite any law in support of her argument. The main thrust of her response on this issue seems to be that the Defendants' argument elevates form over substance. The Defendants counter by reiterating their arguments and by claiming that Ms. Carter's proffer of facts is inappropriate at this stage because the documents she cites were not part of her Amended Complaint. See Pennsylvania ex rel. Zimmerman v. Pepsico, Inc., 836 F.2d 173, 181 (3d Cir. 1988) ("It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.") (internal quotation omitted).

The confusing interrelation between the Police Department and the Police Commission seems to suggest that there is at least a question of fact as to who Ms. Carter's employer was. The Merger Agreement attached to Defendants' Motion does not sufficiently answer all of the questions with regard to which entity may be held responsible for which actions against Ms. Carter, whether by exhausting remedies as to the Police Department Ms. Carter also effectively exhausted remedies as to the Police Commission. The Court can not dismiss Count II of Ms. Carter's Amended Complaint on the undeveloped facts before it. Thus, Defendants' Motion to Dismiss Count II will be denied.

*Count III*

The Defendants argue that Ms. Carter's claims are barred by the one-year statute of limitations on defamation claims. They argue that since Ms. Carter does not specifically allege when the defamatory comments were made, the claim must be dismissed as untimely. The Defendants contend that Rule 9 of the Federal Rules of Civil Procedure require a plaintiff to plead time and place. Ms. Carter responds that she has pleaded "that the defamation occurred in

14

the past and is continuing." Pl.'s Resp. at 9. She claims that she does not know yet the precise details of the claim, and will learn more during discovery. Ms. Carter does plead that the Supervisor Defendants defamed her to prospective employers while she was on part time status. Thus, she at least provides a general time frame (between August, 2006 and the present), but does not indicate definitively whether the comments were made within a year of the filing of the complaint.

Furthermore, Defendants argue that Ms. Carter has failed to sufficiently plead a cognizable defamation claim because she has not set forth the substance of the allegedly defamatory comments, nor has she specified the recipient(s) or when the comments were made. They recite the elements of a defamation claim under 42 Pa. C.S. § 8343(a) as (1) defamatory character of the communication, (2) its publication by defendant, (3) its application to plaintiff, (4) understanding by recipient of defamatory meaning, (5) understanding by recipient as applied to plaintiff, (6) special harm, and (7) absence of conditionally privileged occasion. The Defendants argue that a court cannot determine whether or not a statement is capable of defamatory meaning without knowing the statement and its context.

Ms. Carter alleges that she is not required to plead any more than she already has at this stage. She argues that stating that false statements to prospective employers made knowing that the statements were false is enough to plead a defamation claim.

Ms. Carter's defamation allegations fall short of even the liberal federal pleading standards. As the Defendants point out, she has not set forth the substance of the allegedly defamatory comments, nor has she specified the putative recipient(s) or when the comments were made. No defendant could defend against such allegations in any meaningful way. The Court

will dismiss Count III of Ms. Carter's Amended Complaint without prejudice.

*Punitive Damages*

Defendants argue that Ms. Carter is not entitled to punitive damages against the Police Commission, the Police Department or against the individual defendants in their official capacities. Ms. Carter does not oppose this part of Defendants' Motion. Thus, the Court will dismiss Ms. Carter's demand for punitive damages in Counts I and II of her Amended Complaint.

**CONCLUSION**

For the foregoing reasons, Defendants' Motion to Dismiss is granted in part and denied in part. An Order consistent with this Memorandum follows.

BY THE COURT:

S/Gene E.K. Pratter
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE